**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| RICK EARL, | : | |
| Plaintiff, | : | |
| vs. | : | CA 14-0498-KD-C |
| DIEBOLD, INC., et al., | : | |
| Defendants. | | |

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the notice of removal (Doc. 1), plaintiff's motion to remand (Doc. 9), defendant Diebold, Inc.'s ("Diebold") motion to strike (Doc. 12) and opposition to the remand motion (Doc. 13), and plaintiff's reply (Doc. 16). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **GRANT** plaintiff's motion to remand (Doc. 9).

## FINDINGS OF FACT

In the complaint (Doc. 1, Exhibit A, COMPLAINT), filed in the Circuit Court of Mobile County, Alabama on September 17, 2014, plaintiff, Rick Earl, asserts four claims against Diebold and Samuel Elliott—for malicious prosecution/false arrest, abuse of process, false imprisonment, and intentional infliction of emotional distress (*see id.* at 11-13 & 14).[1] All of Earl's claims arise out of his September 14, 2012 arrest for "failing to

---

[1]     While plaintiff also asserted a breach of the peace claim in his complaint (*id.* at 13-14) and clearly states that "[d]efendants Cook Claims and Barnes[,] with the knowledge and acquiescence of the remaining defendants, used constructive force, intimidation, and oppression in repossessing the Ford Focus[,]" (*id.* at ¶ 55), he makes clear in his motion to
(Continued)

return a Diebold company car after allegedly being requested to do so by Defendants."
(Doc. 9, at 1-2; *see also* Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 23-36.) The *ad damnum*
clauses of each of the four counts previously referenced are identical, Earl demanding
judgment against the defendants "for compensatory and punitive damages in excess of
the minimal jurisdictional limits of this Court [that is, the Mobile County Circuit Court],
plus interest and costs." (*Id.* at 12, 13 & 14.) With respect to the malicious
prosecution/false arrest and abuse of process claims, Earl avers he was damaged "in
that he was wrongfully arrested, incurred costs associated with that wrongful arrest,
suffered mental anguish/emotional distress, and other damages" (*id.* at ¶¶ 42 & 48);
with respect to his false imprisonment claim, he avers he "was damaged as a result of
[the] defendants' unlawful detention of him[]" (*id.* at ¶ 53); and with respect to his
intentional infliction of emotion distress claim, plaintiff avers that in causing him to be
arrested, the defendants knew or should have know that their conduct "would cause
[him] severe mental anguish and emotional distress" and that "[t]he intentional
infliction of emotion distress was wanton, reckless, grossly negligent, intentional,
contumacious, and done without regard to the rights of plaintiff[]" (*id.* at ¶¶ 58 & 59).

     Diebold was served with the summons and complaint on October 22, 2014 (Doc.
1, Exhibit A, at 122; *see id.* at 77 (Elliott was served on September 22, 2014)) and filed the
notice of removal on November 3, 2014 (Doc. 1). Therein, the removing parties contend
that this Court should use its "judicial experience" and "common sense" with respect to
the aforementioned allegations contained in plaintiff's complaint and find that the

---

remand that "[p]aragraphs 25-27 and the Breach of the Peace Cou[n]t apply only to the
Defendants dismissed before removal [that is, Cooks Claims Services, Inc. and Joseph Barnes]."
(Doc. 9, at 2; *see also id.* at 1.)

amount in controversy in this case exceeds $75,000, exclusive of interest and costs. (*See id.* at 5-8.) Indeed, relying primarily on rulings in cases from the Northern District of Alabama, *see Jones v. Hartford Fire Ins. Co.,* 2013 WL 550419, *1 (N.D. Ala. Feb. 7, 2013) ("[T]he moment a state court plaintiff seeks unspecified damages of various kinds, such as punitive damages, or emotional distress, or attorneys' fees, the claim automatically is deemed to exceed $75,000 and becomes removable under 28 U.S.C. § 1332."); *Seckel v. Travelers Home & Marine Ins. Co.,* 2013 WL 360421, *2 (N.D. Ala. Jan. 29, 2013) ("Although Mr. Seckel only specifically claimed $26,430 in actual damages in his state court complaint, the unspecified damages he seeks for his alleged emotional distress and unjust enrichment claims allow the Defendant to meet the amount in controversy requirement. Without an affidavit from Mr. Seckel stating that he will not claim any more than $74,999.99 from Travelers in damages, this court has jurisdiction over the case and DENIES Mr. Seckel's motion to remand."); *Smith v. State Farm Fire & Cas. Co.,* 868 F.Supp.2d 1333, 1335 (N.D. Ala. 2012) ("[P]laintiffs . . . who want to pursue claims against diverse parties in a state court seeking unspecified damages of various kinds, such as punitive damages and emotional distress, must in their complaint formally and expressly disclaim any entitlement to more than $74,999.99, and categorically state that plaintiff will never accept more. Otherwise, a plaintiff will find herself in a federal court[.]"), the removing defendants contend that "the allegations on the face of the Complaint establish that the amount in controversy exceeds the jurisdictional minimum under 28 U.S.C. § 1332[]" inasmuch as Earl "seeks an unspecified amount of damages of various kinds, including mental anguish, emotional distress, and punitive damages[]" and failed to disclaim an entitlement to more than $74,999.99. (*Id.* at 6-8.)[2]

---

[2]     The defendant concludes its argument in this regard by parenthetically citing to (Continued)

3

Some nine days ***after*** the filing of the notice of removal, on November 12, 2014,

plaintiff's counsel sent Diebold's attorney a demand letter. (*See* Doc. 9, Exhibit A.)

> Following our conversation where you advised your client wanted to explore settlement early on, I have discussed the pros and cons of settling the case with Mr. Earl. We will accept $74,000 to settle this case along with a letter from Diebold stating its agreement that Mr. Earl resigned rather than was terminated. We extend this offer as being fair and reasonable. Per my discussions with you, we look forward to a prompt response.

(*Id.*)   Diebold did respond; however, the corporate defendant seeks a striking of its

response/settlement offer. (*See* Doc. 12.)[3]

---

*Employers Mut. Cas. Co. v. Evans,* 76 F.Supp.2d 1257 (N.D. Ala. 1999), which relied on two Alabama cases, *Wal-Mart Stores, Inc. v. Jones,* 533 So.2d 551 (Ala. 1988) and *Big B. Inc. v. Cottingham,* 634 So.2d 999 (Ala. 1993), *abrogated as recognized in Horton Homes, Inc. v. Brooks,* 832 So.2d 44 (Ala. 2001), to find that it could exercise diversity jurisdiction. *Id.* at 1260. "These are Alabama cases which closely resemble the underlying litigation. Because each contains similar claims and fact patterns, and because the awards in each case easily exceed the statutorily required amount, the court finds that it has jurisdiction." *Id.; see also id.* at 1259 n.1 ("The plaintiffs in the underlying action allege that they went shopping at Handy T.V., Inc., left the premises, proceeded to return home, were followed to their home by Lane Evans and an indefinite number of additional Handy T.V. employees; upon arrival home, Evans and another male got out of their vehicle, accused the minor plaintiff [of] being a thief and stealing property from Handy T.V., forced the minor plaintiff to disrobe in public in the daytime on his family's front lawn, show them the contents of his clothes, and told him to never return to Handy T.V.").

[3]   Diebold's Rule 12(f) motion to strike (Doc. 12) is due to be **DENIED** because the movant has not established its entitlement to this "'drastic, disfavored remedy.'" *Evonik DeGussa Corp. v. Quality Carriers, Inc.,* 2007 WL 4358260, *1 (S.D. Ala. Dec. 13, 2007), quoting *English v. CSA Equipment Co., LLC,* 2006 WL 2456030, *2 (S.D. Ala. Aug. 22, 2006) (other citations omitted). This denial, however, does not mean that the Court should consider the contents of Diebold's November 18, 2014 settlement offer—it should ***not***—inasmuch as "[i]n determining the amount in controversy, it is irrelevant what Defendant believes the true value of Plaintiff's case to be." *Claxton v. Kum & Go, L.C.,* 2014 WL 6685816, *4 (W.D. Mo. Nov. 26, 2014) (citing cases); *see also Stevenson v. Schneider Electric U.S.A., Inc.,* 2014 WL 789081, *5 (D. Colo. Feb. 27, 2014) ("[A]lthough a plaintiff's offer of settlement can be used to establish the amount in controversy, the Court is aware of no authority stating that defendant's offer of settlement is entitled to the same presumption."); *Gehl v. Direct Transport, Ltd.,* 2013 WL 424300, *3 (M.D. Fla. Feb. 4, 2013) ("Every case on this subject [of settlement demands and offers] generally instructs that the relevant inquiry is plaintiff focused. Counsel cites no case, and the Court is aware of none, where a defendant's settlement offer, by itself, was considered relevant evidence to establish the amount in controversy."). In addition, plaintiff has not established that this Court can consider the November 18, 2014 email from defense counsel as evidence of the amount in controversy given that it was not sent until after the notice of removal was filed. *Marsh v. Lowe,* 2012 WL 443819, *3 (N.D. W.Va. Feb. 10, 2012) ("[T]he January 27, 2012 letter from defense (Continued)

Plaintiff filed his motion to remand on December 3, 2014 (Doc. 9), Diebold its response in opposition on December 22, 2014 (Doc. 13), and plaintiff his reply on January 5, 2015 (Doc. 16). Based upon the contents of the removal petition (Doc. 1) and the response in opposition (Doc. 13), the undersigned appreciates Diebold  to make three arguments in support of its claim that the amount in controversy in this case necessarily exceeds $75,000: (1) Alabama courts have routinely entered verdicts in excess of $75,000 in similar cases based solely on a false imprisonment claim; (2) plaintiff's requests for compensatory damages (including damages for severe mental anguish and emotional distress) and punitive damages as to all his claims clearly push the amount in controversy above the $75,000 threshold; and (3) plaintiff's settlement demand affirms that his claims  exceed the  $75,000 threshold. (*Compare* Doc. 1 *with* Doc. 13.)

## CONCLUSIONS OF LAW

### A.    Jurisdiction in General.

There can be no doubt but that "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval

---

counsel cannot be considered by this Court as evidence of the amount in controversy as it was not sent until after the notice of removal had been filed."). Of course, plaintiff's settlement demand was also sent after the notice of removal was filed (*compare* Doc. 9, Exhibit A *with* Doc. 1); however, that settlement demand "counts for something[]" *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994), and is arguably evidence filed after the notice of removal that is relevant to the state of affairs at the time of removal, *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).

statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" (internal citations omitted)). Moreover, the removing defendant must bear "the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted).

Where, as here, jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 (*see* Doc. 1, at ¶¶ 3 & 4 ("This removal is based on diversity of citizenship. Pursuant to 28 U.S.C. § 1441, a defendant may remove a civil action originally filed in a state court to the federal district court when the district court has original jurisdiction to consider the case. . . . This Court has original federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest

6

and costs."")),[4] the removing parties, Diebold and Elliott, bear the burden of establishing complete diversity of citizenship, that is, that the plaintiff is diverse from all the defendants, *Triggs, supra,* 154 F.3d at 1287 (citation omitted), and, in addition, must establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement."), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000); *see also Roe v. Michelin North America, Inc.,* 613 F.3d 1058, 1061 (11th Cir. 2010) ("If a plaintiff makes 'an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement.'"); *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir. 2003) ("[W]here jurisdiction is based on a claim for indeterminate damages, . . . the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum."). Moreover, as a procedural matter, the removal must be timely. *See, e.g., Clingan v. Celtic Life Ins. Co.,* 244 F.Supp.2d 1298, 1302 (M.D. Ala. 2003) ("The time limit in 28 U.S.C. § 1446(b) is 'mandatory and must be

---

[4]     Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).

strictly applied.'"); *cf. Moore v. North America Sports, Inc.*, 623 F.3d 1325, 1329 (11th Cir.

2010) ("[T]he timeliness of removal is a procedural defect-not a jurisdictional one.").[5]

### B.    Whether the Amount in Controversy Has Been Satisfied.

Mere diversity of citizenship is not sufficient to create jurisdiction under § 1332

since "the court is obligated to assure itself that the case involves the requisite amount

in controversy." *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000)

(citations omitted). And, "[w]hen, as here, damages are not specified in the state court

complaint, a removing defendant must prove by a preponderance of the evidence that

the amount in controversy more likely than not exceeds the jurisdictional requirement."

*Pate v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 3372195, at *1 (N.D. Fla. Aug. 25, 2010)

(citations and internal quotation marks omitted); *see Fitzgerald v. Besam Automated

Entrance Systems*, 282 F.Supp.2d 1309, 1314 (S.D. Ala. 2003) ("When the state court

complaint is indeterminate, then an intermediate burden[—preponderance of the

evidence—]is placed upon the removing defendant since there is no representation by

plaintiff's counsel that would be entitled to deference."), *aff'd,* 107 Fed.Appx. 893 (11th

Cir. Jun. 4, 2004). Because defendants removed this case under the first paragraph of

Section 1446(b)[6] (*see* Doc. 1, ¶ 7 ("This Notice is being filed within thirty days of

---

[5]       The plaintiff nowhere contends that the instant removal petition was not timely filed or that diversity of citizenship does not exist (*see* Docs. 9 & 16); therefore, the sole focus of this report and recommendation is whether the removing parties have established by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs.

[6]       The first paragraph of 28 U.S.C. § 1446(b) provides:

        The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons

(Continued)

Diebold's receipt through service of the summons of the complaint as provided in 28 U.S.C. Section 1446(b)(2)(C)."), the Eleventh Circuit's decision in *Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010), guides the undersigned's analysis. *See id.* at 1062 (characterizing that case as a "§ 1446(b) first-paragraph case[ ] in which the plaintiff does not make a specific damages demand"). In *Roe*, the Eleventh Circuit stated:

> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. [*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 771 (11th Cir.2010).] Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than

---

> upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

*Id.* Of course, Congress, through § 1446(b), has established a "bifurcated removal approach," *Lee v. Lilly Trucking of Virginia, Inc.*, 2012 WL 960989, *1 (M.D. Ala. Mar. 21, 2012), under which

> a state court defendant may remove a case to federal court at two procedurally distinct moments in time. First, if it is facially apparent from the initial pleading that subject matter jurisdiction exists, § 1446(b)(1) provides the procedure for removal. *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Such a removal must be accomplished "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action is based . . . ." § 1446(b)(1). However, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." § 1446(b)(3); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007).

*Id.*

9

the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").

Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. *See id.* at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F.Supp.2d 995, 999 (M.D. Ala. 2009)); s*ee also Williams*[*v. Best Buy Co., Inc.*], 269 F.3d [1316,] 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

613 F.3d at 1061-1062.

The Eleventh Circuit further stated that the approach announced in *Roe* "is consistent with those of other circuits[,]" *id.* at 1062, specifically citing, *inter alia*, two Fifth Circuit cases—*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999), and *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000). *See* 613 F.3d at 1062-1063. *Luckett* and *Gebbia* both demonstrate that "the Fifth Circuit has repeatedly acknowledged the power of district court judges to appraise the worth of plaintiffs' claims based on the nature of the allegations stated in their complaints." *Id.* at 1063; *see Luckett*, 171 F.3d at 298; *Gebbia*, 233 F.3d at 833; *cf. Purdiman v. Organon Pharmaceuticals USA, Inc.*, 2008 WL 686996, at *2 (N.D. Ga. Mar. 12, 2008) (pre-*Roe*) (citing both *Luckett* and *Gebbia*, and holding that "[a]lthough the Complaint excludes any reference to the amount of damages Plaintiff has sustained as a result of Defendant's allegedly tortious conduct, after full review and consideration, the Court concludes that is it apparent from the factual allegations in the Complaint that the amount in controversy in this action exceeds $75,000"). Thus, at least in the context of a Section 1446(b) first-paragraph removal case in which the plaintiff does not make a specific damages demand—such as

10

this one—a district court may employ "its judicial experience or common sense in discerning whether the allegations in a complaint facially establish the jurisdictionally required amount in controversy." *Roe*, 613 F.3d at 1063.

With these principles in mind, the undersigned considers each of Diebold's three arguments in support of its claim that the amount in controversy in this case necessarily exceeds $75,000. First, Diebold contends that Alabama courts have routinely entered verdicts in excess of $75,000 in similar cases based solely on a false imprisonment claim and because the false imprisonment claim in this case resembles the claims in those cases, this Court can use its judicial experience and common sense to determine that plaintiff's false imprisonment claim exceeds the $75,000 amount-in-controversy threshold. (*Compare* Doc. 1, at 8 *with* Doc. 13, at 2-4.) Such "evidence" simply "does not suffice[]" to carry a removing defendant's burden to prove by a preponderance of the evidence that "the amount in controversy exceeds the jurisdictional minimum[.]" *Edwards v. G.A. Braun, Inc.,* 2013 WL 656259, *3 (S.D. Ala. Feb. 1, 2013) (citation omitted), *report and recommendation adopted,* 2013 WL 656299 (S.D. Ala. Feb. 21, 2013); *see Federated Mut. Ins. Co., supra,* 329 F.3d at 809 ("Federated does point to a number of Alabama cases where courts have awarded punitive damages well in excess of $75,000 for bad faith failure to pay, but mere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature of Federated's assertion in this case." (internal citations omitted)); *Jackson v. Litton Loan Servicing, LP,* 2010 WL 3168117, *5 (M.D. Ala. Aug. 10, 2010) ("[R]eliance on state court awards in purportedly similar cases is disfavored in this Circuit."). Therefore, this Court should reject Diebold's

argument that the amount in controversy threshold can be established by citation to jury awards in state court cases it purports are similar to the case at hand.[7]

Diebold next argues that Earl's requests for compensatory damages (including damages for severe mental anguish and emotional distress) and punitive damages as to all his claims clearly push the amount in controversy above the $75,000 threshold. (*Compare* Doc. 1, at 5-7 *with* Doc. 13, at 4-7.) In *Robinson v. Clayton,* 2012 WL 6028940, *2 (S.D. Ala. Dec. 3, 2012), this Court specifically determined that "merely listing categories of damage[,]" which is exactly what Diebold purports to do in this case (Doc. 1, at 5-7; Doc. 13, at 4-7), does not satisfy the removing defendant's burden of establishing that the amount in controversy exceeds the $75,000 threshold. In reaching this conclusion, this Court favorably cited the conclusion in *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1318 & 1320 (11th Cir. 2001) ("allegations that the plaintiff tripped over a curb and suffered permanent physical and mental injuries, that she incurred substantial medical expenses, that she suffered lost wages, that she experienced a diminished earning capacity, and that she would continue to suffer those damages in the future, along with a demand for both compensatory and punitive damages, did not render it facially apparent that the amount in controversy exceeded $75,000"), while parenthetically noting that "*Williams* is a governing application" of the governing principles set forth in *Roe* and *Pretka* and that *Williams* "was not overruled by *Pretka* or *Roe* (nor could it have been, given that *Pretka* and *Roe* were not en banc opinions)."

---

[7]      In truth, the undersigned fails to discern the striking similarity between this case and *Big B, Inc. v. Cottingham*, 634 So.2d 999 (Ala. 1993) and *Wal-Mart Stores, Inc. v. Jones,* 533 So.2d 551 (Ala. 1988), given that in the Alabama cases the plaintiffs were "falsely imprisoned" by the defendants' own employees/agents—and in the case of Cottingham sexually assaulted by an agent of the defendant, *compare* 634 So.2d at 1002 *with* 533 So.2d at 551—whereas in this case plaintiff was arrested and imprisoned not by agents of the defendant but by agents of the State of Alabama (*see* Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 24-27).

*Robinson, supra,* at *2 & n.1. Based upon *Williams* and *Robinson*, therefore, the undersigned **RECOMMENDS** that the Court conclude that the allegations here that plaintiff was made to expend monies to hire defense counsel for his criminal prosecution, was caused to pay a bail bondsman for his release from jail, was caused to suffer severe emotional distress and mental anguish,[8] along with a demand for both compensatory and punitive damages,[9] do not render it facially apparent that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.[10] *Cf. Lambeth v. Peterbilt Motors Co.*, 2012 WL 1712692, *3 (S.D. Ala. May 15, 2012) ("While the back injury is characterized as 'serious,' nothing in the Complaint elaborates on the

---

[8]     The other "damage" Diebold references in its notice of removal (*see* Doc. 1, at 6 ("Plaintiff 'was damaged in that he was wrongfully arrested, incurred costs associated with that wrongful arrest, suffered mental anguish/emotional distress, and other damages to be proved at trial.'")) is simply a combination of the aforementioned damages.

[9]     The plaintiff's attachment of the words "in excess of the minimal jurisdictional limits of this Court," (*see* Doc. 1, Exhibit A, COMPLAINT, at 12) provides no assistance to Diebold since the Circuit Court of Mobile County, Alabama (that is, the court to which the complaint was making reference) has jurisdiction over civil matters where the amount in controversy exceeds $3,000.00, *see* Ala. Code § 12-11-30(1).

[10]     The undersigned further **RECOMMENDS** that the Court, in reaching this conclusion, explicitly find unpersuasive the contrary position in the Northern District of Alabama that "the moment a state court plaintiff seeks unspecified damages of various kinds, such as punitive damages, or emotional distress, or attorneys' fees, the claim automatically is deemed to exceed $75,000 and becomes removable under 28 U.S.C. § 1332[,]" *Jones v. Hartford Fire Ins. Co.*, 2013 WL 550419, *1 (N.D. Ala. Feb. 7, 2013); *see also Smith v. State Farm Fire & Cas. Co.*, 868 F.Supp.2d 1333, 1335 (N.D. Ala. 2012) ("[P]laintiffs . . . who want to pursue claims against diverse parties in a state court seeking unspecified damages of various kinds, such as punitive damages and emotional distress, must in their complaint formally and expressly disclaim any entitlement to more than $74,999.99, and categorically state that plaintiff will never accept more. Otherwise, a plaintiff will find herself in federal court[.]"), for the very reasons the Middle District of Alabama in *Mustafa v. Market Street Mortgage Corp.*, 840 F.Supp.2d 1287 (M.D. Ala. 2012) rejected the Northern District of Alabama's "multiplier" holding in *Blackwell v. Great American Financial Resources, Inc.*, 620 F.Supp.2d 1289 (N.D. Ala. 2009). *Mustafa,* 840 F.Supp.2d at 1291 ("This Court finds *Blackwell* unpersuasive, however, for it fails to put the burden of proof on the removing party, ignores established precedent, and undermines the foundational principle that a federal court should construe its removal jurisdiction[] narrowly."). *Jones* and *Smith* are unpersuasive for the very same reasons.

nature or severity of that injury, or otherwise lends substance or meaning to it.  We simply do not know—or have any basis for inferring from the pleadings—anything about how severe, permanent, debilitating or painful the injury might be; how extensive, costly, or traumatic the course of treatment was, is or might be; or whether and to what extent the injury did, does or will constrain [the plaintiff's] work or life activities."); *Hill v. Toys "R" Us, Inc.*, 2010 WL 3834532, *1-3 (S.D. Ala. Sept. 24, 2010) (remanding case to state court for failure to prove the amount in controversy where the plaintiff alleged that she suffered back, neck, arm and head injuries; that she has experienced and continues to experience pain and suffering, emotional distress, and mental anguish; and that she has incurred ongoing medical expenses).

In addition to the foregoing, the plaintiff's allegations of mental anguish and emotional distress are too vague and speculative for the undersigned to find that the plaintiff's claims surpass the jurisdictional threshold. *See Mustafa, supra,* 840 F.Supp.2d at 1291 (concluding that the Court could not make a non-speculative estimate of the value of the plaintiff's mental anguish claim); *Goodin v. Fidelity Nat'l Title Ins. Co.*, 2012 WL 473913, *3 (M.D. Fla. Feb. 14, 2012) (finding that "[plaintiff's] allegations of 'mental anguish and stress' are impermissibly vague"), *aff'd,* 491 Fed.Appx. 139 (11th Cir. Oct. 4, 2012), *cert. denied,* ____ U.S. ____, 133 S.Ct. 2810, 186 L.Ed.2d 862 (2013). Indeed, Earl's complaint, like the complaint in *Arrington v. State Farm Ins. Co.,* 2014 WL 2961104 (M.D. Ala. Jul. 1, 2014), "contains no specific allegations from which one could draw any reasonable inference regarding the extent of the [plaintiff's] mental anguish [or] emotional distress," and, as in *Arrington,* "[i]n [this] court's 'judicial experience,' mental anguish and emotional distress damages in cases such as this vary widely depending on the circumstances, and even very similar circumstances may affect different plaintiffs in different ways." *Id.* at *6. Thus, the undersigned declines to "indulge in speculation or

fill empty gaps in the plaintiff's factual averments with unfounded assumptions about what the evidence may show." *Id.,* citing *Roe, supra,* 613 F.3d at 1061; *see Pretka v. Kolter City Plaza, II, Inc.,* 608 F.3d 744, 753-754 (11th Cir. 2010) ("[W]ithout facts or specific allegations, the amount in controversy could be 'divined [only] by looking to the stars'—only through speculation—and that is impermissible."). And, finally, while punitive damages claims should be considered when evaluating whether the value of a case exceeds $75,000, "there is nothing talismanic about such a demand that would *per se* satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction." *Lambeth, supra,* at *4. Here, the undersigned cannot estimate the value of the plaintiff's punitive damages claims without engaging in pure speculation,[11] *see*

---

[11]     The undersigned recognizes that, in *Blackwell, supra,* 620 F.Supp.2d at 1291, the Northern District of Alabama determined that where the plaintiff alleged $23,172.28 in compensatory damages, "a punitive award of slightly more than double the compensatory damages claim would occasion an amount in controversy that exceeds the jurisdictional minimum. Such an amount for punitive damages is uncontroversially within the limits of the Due Process Clause." Accordingly, that court concluded that the punitive damages claims in that case established the jurisdictional requirements with regard to the amount in controversy. *Id.* at 1291-1292.

However, the undersigned declines to follow the reasoning in *Blackwell* and, instead, follows the reasoning of the Middle District of Alabama in *Mustafa,* where it declined to apply a multiplier to the plaintiff's $19,444.33 in compensatory damages when evaluating the plaintiff's mental anguish and punitive damages claims. *Mustafa,* 840 F.Supp.2d at 1291-1292. In *Mustafa,* the Middle District considered the analysis in *Blackwell,* but determined that it would be inappropriate for the court to evaluate punitive damages claims by applying multipliers to compensatory damages claims. *Id.* The Middle District stated as follows:

> This Court finds *Blackwell* unpersuasive, however, for it fails to put the burden of proof on the removing party, ignores established precedent, and undermines the foundational principle that a federal court should construe its removal jurisdiction[] narrowly. First, applying a single digit multiplier sufficiently high to satisfy the amount-in-controversy requirement, without more, assumes away the removing party's burden to prove the propriety of removal by a preponderance of the evidence. Second, it also ignores the Eleventh Circuit's command in *Lowery v. Alabama Power Company* to look at the facts supporting a damages assertion, because "the existence of jurisdiction should not be divined by looking to the stars." 483 F.3d 1184 (11th Cir. 2007). Woodenly applying a single digit multiple of the compensatory damages claimed, without a non-speculative reason to believe the jury would come back with such an award,

(Continued)

*Mustafa*, 840 F.Supp.2d at 1291, an endeavor which *Roe* and *Pretka* eschew, *see, e.g.*, 608 F.3d at 754.

Diebold's final argument is that plaintiff's settlement demand affirms that his claims exceed the $75,000 threshold. (*See* Doc. 13, at 7-11.) It is certainly clear that in an effort to meet its burden of establishing that the amount in controversy exceeds $75,000, the removing defendant may present additional evidence, including evidence of settlement demands. *See Roe*, 613 F.3d at 1061 ("In some cases, [the removing defendant's] burden requires [it] to provide additional evidence demonstrating that removal is proper." (footnote and citation omitted)); *Burns, supra*, 31 F.3d at 1097 (considering the plaintiff's settlement demands before deciding whether the removing defendant established that the amount in controversy satisfied the jurisdictional requirements); *Land Clearing Co., LLC v. Navistar, Inc.*, 2012 WL 206171, *2 (S.D. Ala. Jan. 24, 2012) (same); *Benandi v. Mediacom Southeast, LLC*, 2011 WL 5077403, *2-4 (S.D. Ala. Sept. 30, 2011) (same), *report and recommendation adopted*, 2011 WL 5077108 (S.D. Ala. Oct. 24, 2011); *Jackson v. Select Portfolio Serv., Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009) (same). Here, of course, the plaintiff—not the defendant—submitted the demand

---

violates *Lowery's* explicit commands and is not a reasonable extrapolation from the pleadings under *Roe*. Third, assuming a punitive damages award of up to nine times compensatory damages (likely the highest multiplier that comports with due process) ignores the principle that courts should construe the remand statutes narrowly so as to resolve jurisdictional uncertainties in favor of remand. *Burns v. Windsor Ins., Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Furthermore, using a multiplier, without more, would trigger grave federalism concerns: cases with compensatory damages of just $8,333.33 could begin finding their way into federal court, thus usurping the States' jurisdiction over all but the smallest claims.

*Id.* Like the court in *Mustafa*, the undersigned declines to evaluate the plaintiff's punitive damages claim by applying a multiplier to the plaintiff's compensatory damages, particularly since plaintiff makes no specific claim for compensatory damages. Indeed, applying a multiplier in this case would require "double" speculation by this Court.

letter dated November 12, 2014 (Doc. 9, Exhibit A); despite this anomaly, the undersigned will consider plaintiff's settlement demand.

The amount requested in a settlement demand does not determine whether the amount in controversy exceeds $75,000, but "it counts for something." *Burns*, 31 F.3d at 1097. This Court has commented that "[s]ettlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence." *Jackson*, 651 F.Supp.2d at 1281 (citations omitted). "On the other hand, settlement offers that provide 'specific information . . . to support [the plaintiff's] claim for damages' suggest the plaintiff is 'offering a reasonable assessment of the value of [his] claim' and are entitled to more weight." *Id.* (citing *Golden Apple Management Co., Inc. v. GEAC Computers, Inc.*, 990 F.Supp. 1368 (M.D. Ala. 1998)).

Here, plaintiff's counsel informed counsel for Diebold that his client would "accept $74,000 to settle this case along with a letter from [the defendant] stating its agreement that Mr. Earl resigned rather than was terminated. We extend this offer as being fair and reasonable." (Doc. 9, Exhibit A.) As was the case in *Montgomery v. Food Giant Supermarkets, Inc.,* 2014 WL 5307890 (S.D. Ala. Oct. 16, 2014), Earl's November 12, 2014 demand letter "is a barebones document that sets forth a dollar figure, but offers [nothing] in the form of specific information explaining how that figure was derived or how it might represent an honest assessment of [plaintiff's] damages." *Id.* at 3. Just as important, it is clear from other contents of the letter (*see* Doc. 9, Exhibit A ("Following our conversation where you advised your client wanted to explore settlement early on, I have discussed the pros and cons of settling the case with Mr. Earl. . . . Per my discussions with you, we look forward to a prompt response.")), that the letter from plaintiff's counsel was a mere invitation to discuss settlement, that is, "nothing more than an initial volley, a shot across the bow by [plaintiff]." *Montgomery, supra; see also id.*

17

("For aught the record shows, the [demand] letter was designed to start the bidding at a high number, rather then to set forth a realistic, clear-eyed evaluation of what is potentially recoverable to [plaintiff] at trial."). Accordingly, as in *Montgomery*, the undersigned recommends that the Court afford little weight to the November 12 letter vis-à-vis the amount-in-controversy calculus. *See id*. For the reasons identified above, plaintiff's demand letter simply does not confirm that which Diebold claims "is apparent from the face of the complaint: the amount in controversy exceeds $75,000, and removal is appropriate." (Doc. 13, at 11.) Instead, as the undersigned has explained at no small length, the face of the complaint in no manner suggests the amount in controversy in this case exceeds the jurisdictional threshold of $75,000 and plaintiff's demand letter does not in any matter affirm (or confirm) that plaintiff's claims exceed the jurisdictional threshold.

## CONCLUSION

*Roe*'s direction to use "judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements[,]" 613 F.3d at 1062, is not an invitation to speculate as to amount in controversy.  Keeping in mind the narrow construction afforded the removal statute, a defendant must still carry its burden to prove that a plaintiff's suit—in this case—more likely than not exceeds $75,000.  Diebold has failed to shoulder that burden.  Accordingly, after careful consideration of the parties' briefing and the pleadings, and for the reasons set forth above, it is **RECOMMENDED** that the motion to remand (Doc. 9) be **GRANTED** and that this matter be **REMANDED** to the Circuit Court of Mobile County, Alabama.[12]

---

[12]    The undersigned further **RECOMMENDS** that the Court **DENY** Diebold's request that the instant remand be conditioned upon Earl filing a stipulation that he will not seek more than $75,000 in damages (*see* Doc. 13, at 11-12 (citing *Smith, supra*, 868 F.Supp.2d at (Continued)

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 5th day of February, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

1335 and *Seckel, supra,* at *2)) inasmuch as such "condition" attached to the remand would be contrary to Eleventh Circuit precedent. *Compare Williams, supra,* 269 F.3d at 1320 ("There are several reasons why a plaintiff would not [] stipulate [his claims do not exceed  $75,000], and a refusal to stipulate standing alone does not satisfy Best Buy's burden of proof on the jurisdictional issue.") *with Burns, supra,* 31 F.3d at 1097 ("The possibility that plaintiff may in the future seek or recover more damages is insufficient to support federal jurisdiction now.") and *Sherman v. Windstream Communications, Inc.,* 2013 WL 2948359, *6 (S.D. Fla. Jun. 14, 2013) (ordering remand to state court and specifically noting that nothing about "Plaintiff's refusal to stipulate that his damages will not exceed $75,000 require[s] a different result.").